UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION


FILED
OCT 20 2010
CLERK

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | \* | CR. 10-30057-RAL |
| Plaintiff, | \* | |
| | \* | REPORT AND RECOMMENDATION |
| -vs- | \* | FOR DISPOSITION OF MOTION |
| | \* | TO SUPPRESS |
| ROBERT MEDEARIS, | \* | |
| Defendant. | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## SUMMARY

A young Native American child was severely injured in a motor vehicle accident. Tribal police believed that Robert Medearis's son, Patrick, was the driver of the vehicle and that Patrick was trying to keep this fact from police because he was on federal supervised release. One of the investigating officers sought and obtained a search warrant from a tribal judge for the vehicle, which had been towed to Medearis's residence. When it was discovered that the front windshield had been cut out of the vehicle, the same officer called and reported this to the tribal judge who then orally authorized the search of Medearis's property for the missing windshield. Police later found the windshield on the premises. After being indicted for tampering with the vehicle, Medearis moved to suppress the windshield and other physical

evidence as well as statements he made to tribal officers and an FBI agent. Because the search did not violate the Fourth Amendment and Medearis's statements were not illegally obtained, the Court recommends that his suppression motion be denied.

## FACTUAL BACKGROUND

Sometime before February 2, 2010, a four-year-old child was badly injured in a motor vehicle accident near Wood, South Dakota. The child's mother, India Ford, said she was the driver of the pickup truck involved, but tribal investigators, based on information they had received, suspected that her boyfriend, Patrick, was the actual driver. After the accident, the pickup, registered to Medearis, was towed and left at his residence.

On February 2, Charles Ginsbach, a special agent with the Rosebud Sioux Tribal Police Department, applied for a warrant to search and seize the pickup from the property. In his supporting affidavit, Ginsbach stated that the front windshield of the pickup possibly had DNA evidence that would show whether Ford was driving the vehicle at the time of the accident. Rosebud Sioux Tribal Judge Janel Sully issued a warrant authorizing tribal police officers to search Medearis's property and seize the pickup.

While executing the warrant, Ginsbach discovered that the windshield had been removed from the pickup. He noticed an ax and pick hammer nearby and glass

shards on the dash and hood of the pickup and concluded that the windshield had been chopped out of the truck's frame.

Upon seeing this, Ginsbach handed Medearis the search warrant and asked where the windshield was. Medearis initially said that he had thrown it away in a dumpster by the high school. He then said that he sold the windshield. When Ginsbach mentioned that he was going to apply for another search warrant, Medearis said, "Go ahead" and drove to the back of his residence.

Fearing that the windshield, and any DNA evidence on it, might be inside the residence and either tampered with or destroyed, Ginsbach ordered three officers to enter the residence to secure its occupants. As the officers did so, Ginsbach called Judge Sully and requested authorization to expand the scope of the original search warrant. She granted the request and issued a telephonic warrant to search Medearis's residence and property for the missing windshield.

Ginsbach entered the residence and informed Medearis that he had received authorization to search the premises and asked Medearis a second time where the windshield was. Medearis again said that he sold it. Ginsbach proceeded outside and located the windshield in an old truck bed on the side of the residence. He photographed and seized the windshield, the pickup from which it had been taken, as well as the ax and hammer, and later arrested Medearis for tampering with evidence. The next day, FBI Agent David Keith and Ginsbach spoke briefly with Medearis about the pickup. Their conversation took place outside Medearis's

3

residence following his release from tribal custody on the tampering charge. While talking to agents, Medearis made incriminating statements in response to a "few" questions.

On February 12, 2010, ten days after the search and seizure occurred, Ginsbach executed, under oath, a supplemental search warrant affidavit before Judge Steve Emery, another Rosebud Sioux tribal judge. The second warrant was intended to memorialize the telephonic search warrant that Judge Sully had issued on February 2, which she had previously briefed Judge Emery on. Judge Emery also signed, on February 12, two search warrant returns, one for the original warrant that Judge Sully had issued and the other for the telephonic warrant that she had later authorized.

## NONCOMPLIANCE WITH RULE 41

It is undisputed that certain provisions of Fed. R. Crim P. 41, relating to the issuance, execution and return of telephonic search warrants[1] were not complied with in this case. But does this matter? And, more importantly, does the failure to follow the procedure set forth in the Rule invalidate Judge Sully's telephonic warrant? The short answer is "no."

---

[1] *See* Fed. R. Crim. P. 41(d), (e) and (f).

The reason is quite elementary. Rule 41 applies only to search warrants involving a federal law enforcement officer or to ones that are "federal" in nature.[2]

Here, the telephonic warrant was issued by a tribal judge and was sought and executed entirely by tribal, not federal, law enforcement officers. And neither Keith nor any other federal agents were involved in the warrant application process or the search itself. This being the case, the lack of adherence to Rule 41's procedural requirements has no bearing on this case.[3]

## CONSTITUTIONALITY OF THE SEARCH

The Fourth Amendment provides the proper standard for determining whether the windshield and other evidence seized by tribal officers is admissible in this federal criminal proceeding.[4] The Warrant Clause of the Fourth Amendment requires that warrants (1) be issued by a neutral and detached judge; (2) contain a "particular[ ] descri[ption of] the place to be searched and the persons or things to be seized"; and (3) be based "upon probable cause supported by Oath or affirmation."[5]

---

[2]*United States v. Cote*, 569 F.3d 391, 393 (8th Cir. 2009); *United States v. Hornbeck*, 118 F.3d 615, 617 & n. 4 (8th Cir. 1997); *United States v. MacConnell*, 868 F.2d 281, 283-84 (8th Cir. 1989).

[3]*Hornbeck*, 118 F.3d at 617 & n. 4; *MacConnell*, 868 F.2d at 283-84; *United States v. Dowty*, No. CR-95-50083, 1996 WL 711517 at **5-6 (D.S.D. Jan. 31, 1996).

[4]*Cote*, 569 F.3d at 393; *Hornbeck*, 118 F.3d at 617; *MacConnell*, 868 F.2d at 284.

[5]U.S. Const. amend. IV; *see also Dalia v. United States*, 441 U.S. 238, 255 (1979).

5

Medearis does not dispute, nor could he, that all three requirements of this Clause were met with respect to the initial written search warrant. Judge Sully acted as a neutral and detached judge in issuing the warrant. The warrant contained a sufficiently detailed description of Medearis's residence and property and of the pickup to be seized. And, under the standards set forth in *Illinois v. Gates*,[6] probable cause existed.

Medearis, though, claims that the further search of his residence and curtilage, based on Judge Sully's telephonic warrant, violated one or more of these requirements. According to Medearis, tribal officers went beyond the scope of the original warrant when they seized and photographed the windshield and took possession of the ax and hammer. He also maintains that her telephonic authorization, based on Ginsbach's later disclosures, did not validate the seizure of this evidence.

Judge Sully testified at the suppression hearing that the information Ginsbach related to her during their telephone conversation was not under oath. Because a warrant cannot be based solely on unsworn oral statements,[7] something more than Ginsbach's verbal update was required to support the issuance of a telephonic search warrant.

---

[6] 462 U.S. 213, 238-39 (1983).

[7] *Frazier v. Roberts*, 441 F.2d 1224, 1226-29 (8th Cir. 1971).

6

But what about the original warrant that Judge Sully issued – could it alone, or in combination with Ginsbach's unsworn statements, satisfy Fourth Amendment strictures and validate the search and seizure of evidence from Medearis's property? Answering this question definitively is no easy task, given the facts and circumstances present. The Court, however, need not engage in this complicated exercise because there is a simpler and relatively straight forward reason to conclude that the search and seizure were constitutional: the "good-faith exception" to the warrant requirement announced in *United States v. Leon*.[8]

In *Leon*, the Supreme Court created a good-faith exception to the Fourth Amendment exclusionary rule.[9] Under this good-faith exception, the exclusionary rule is not to "be applied to exclude the use of evidence obtained by the officers acting in reasonable reliance on a detached and neutral magistrate judge's determination of probable cause in the issuance of a search warrant that is ultimately found to be invalid."[10] The Supreme Court in *Leon* explained the rationale behind the exception in this way:

> It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment.

---

[8] 468 U.S. 897 (1984).

[9] 468 U.S. at 922.

[10] *United States v. Taylor*, 119 F.3d 625, 629 (8th Cir.) (*citing Leon*, 468 U.S. at 905, 922), *cert. denied*, 522 U.S. 962 (1997); *see also United States v. Gipp*, 147 F.3d 680, 688 (8th Cir. 1998) (applying the *Leon* good-faith exception to a tribal search warrant).

In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. "[O]nce the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law." Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations.[11]

"The exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates."[12] The *Leon* rule does not exclude evidence when an officer's reliance on a warrant issued by a judge or magistrate is objectively reasonable.[13] There are, however, four circumstances in which the good-faith exception does not apply:

1. When the issuing judge is misled by information that is false or made in reckless disregard for the truth;

2. When the issuing judge completely abandons her judicial role;

3. When the information provided to the judge includes so little indicia of probable cause that the official belief in its existence is entirely unreasonable; and

4. When the warrant is so facially deficient that the executing officer cannot reasonable presume it to be valid.[14]

---

[11]*Leon*, 468 U.S. at 921 (alteration in original) (citation omitted).

[12]*Id.* at 916.

[13]*Id.* at 922.

[14]*Id.* at 923; *see also United States v Hessman*, 369 F.3d 1016, 1020 (8th Cir. 2004) (listing these four situations).

None of these disqualifying conditions precedent are present here. Nothing that Ginsbach stated in his affidavit or orally contains knowing or reckless falsities. Medearis does not claim otherwise or assert that any of the information that Ginsbach supplied to Judge Sully was inaccurate.

There also is no evidence that Judge Sully failed to act in a neutral and detached manner or that she was a "mere rubber stamp." Nor is there evidence to suggest that she was somehow involved in the "competitive enterprise of ferreting out crime,"[15] or that she blindly approved the telephonic warrant.

Significantly, the collective information given to Judge Sully was more than adequate to enable her to decide whether probable cause existed. In fact, the content of the February 2 affidavit and oral statements was far richer and detailed than that provided in other cases[16] and by no means was "bare bones."

Finally, Ginsbach's reliance on the warrant was in good faith and objectively reasonable. He reasonably believed that he had a valid telephonic warrant, or at least court approved authority, to search for and seize the windshield and related evidence. Nothing in either the Rosebud Sioux Tribe Law and Order Code or the BIA Law Enforcement Handbook used by the Rosebud Police Department in connection

---

[15] *Johnson v. United States*, 333 U.S. 10, 14 (1948).

[16] *See e.g. Leon*, 468 U.S. at 915; *Aguilar v. Texas*, 378 U.S. 108, 109 (1964); *Giordenello v. United States*, 357 U.S. 480, 481 (1958).

9

with its "638" contract,[17] would have made a reasonable tribal officer, in his position, conclude otherwise. Judge Sully testified that Ginsbach's telephonic request was a continuation of an earlier request he made, which had been granted, and sought to include the search and seizure of property that had previously been approved.[18] And, it is debatable whether Ginsbach even needed to contact her on a follow-up basis and obtain permission to expand the search. Indeed, the original warrant allowed for the search and seizure of Medearis's pickup, and arguably included the windshield and all other component parts affixed to it.

The Eighth Circuit has applied the *Leon* good-faith exception in circumstances very similar to those in this case. In *United States v. Hessman*, a search warrant was issued by telephone and facsimile. The officer had not signed the warrant application, and the magistrate did not place the officer under oath or talk to the officer about the facts supporting the application before signing the warrant and faxing it back to the officer for execution. The appeals court held that the exception

---

[17]*See* Pub. L. 93-638; *United States v. Stoneman*, No. CR. 09-30101-RAL, 2010 WL 2710477 at *1 (D.S.D. July 8, 2010); *Big Crow v. Rattling Leaf*, 296 F.Supp.2d 1067, 1068 (D.S.D. 2004).

[18]*See State v. Nunez*, 138 Idaho 636, 641, 67 P.3d 831, 836 (2003) (It was unnecessary for police officer to have oath administered in proceeding to issue search warrant, where officer had previously appeared before judge to issue same warrant, but had been unable to perform search; judge treated second proceeding as continuance of initial one; officer was simply giving additional up-to-date information to support previous testimony.)

applied.[19] Other courts, confronting analogous situations, have applied the exception as well.[20]

Courts have likewise applied the *Leon* exception in cases where the issuing judge neglected to record, transcribe and certify the officer's oral statements.[21] And,

---

[19]369 F.3d at 1018-23.

[20]*See e.g. United States v. Callwood*, 66 F.3d 1110, 1113 (10th Cir. 1995) (ruling that the exclusion of evidence is not the "appropriate remedy" for the issuing magistrate judge's failure to administer an oath to the officer, referring to *Leon*); *United States v. Gordon*, No. 93-3836, 1995 WL 108988 at *4 (6th Cir.) (relying on *Leon* and refusing to suppress contraband seized by police where the warrant, that the defendant was arrested on, was based on an unsworn and deficient affidavit), *cert. denied*, 516 U.S. 898 (1995); *United States v. Kurt*, 986 F.2d 309, 311 (9th Cir. 1993) (applying the good-faith exception where a judge instructed the detective to change an address on the warrant without administering an oath); *United States v. Moore*, 968 F.2d 216, 223 (2d Cir.) (holding "the lack of an oath or affirmation by the presiding officer did not destroy the warrant's final validity" so *Leon* applies), *cert. denied*, 506 U.S. 980 (1992); *United States v. Richardson*, 943 F.2d 547, 548, 550-51 (5th Cir. 1991) (reversing the district court's decision to suppress where the agent had not signed the affidavit and the magistrate judge, in a telephone conversation, did not require an oath or affirmation of the facts in the affidavit); *United States v. Matias*, 836 F.2d 744, 747 (2d Cir. 1988) (rejecting a claim that a warrant was invalid because government agents applying for the warrant were not placed under oath or formally sworn); *see also United States v. Johnson*, No. 8:08CR234, 2009 WL 483233 at **1-2 (D. Neb. Feb. 23, 2009) (concluding that a warrant issued without the applicant officer being sworn did not, based on *Leon*, require suppression under the exclusionary rule); *United States v. Henderson*, No. CR. 05-0078, 2005 WL 3021982 at *5 (N.D. Iowa, Nov. 10, 2005) (finding that even if the officer had not been placed under oath, the *Leon* good-faith exception to the exclusionary rule applied), *report and recommendation adopted*, 2005 WL 3263912, *aff'd*, 471 F.3d 935 (8th Cir. 2006); *Mills v. Graves*, 930 F.2d 729, 734 (9th Cir. 1991) (upholding a telephonic search warrant despite the fact that the officer's oath was taken five days later).

[21]*Cote*, 569 F.3d at 392-92; *see also United States v. Chaar*, 137 F.3d 359, 362-64 (6th Cir. 1998) (police officer's reliance on telephonic warrant was in good faith and objectively reasonable even though the warrant did not comply with Rule 41's recording and transcription requirements); *United States v. Clyburn*, 24 F.3d 613, 617 (4th Cir.) (Fourth Amendment does not require that statements made in support of probable cause be tape recorded or otherwise placed on the record or made a part of the search warrant affidavit), *cert. denied*, 513 U.S. 907 (1994).

the exception has been applied when other technical, non-fundamental errors have occurred in the warrant process.[22]

Persuaded by *Leon*, its companion case, *Massachusetts v. Sheppard*[23] and precedent in this and other circuits, the Court concludes that the physical evidence obtained from Medearis's property should not be suppressed. If other cases, including those from the Eighth Circuit, would probably find the Medearis warrant valid, it is difficult to say that Ginsbach's conduct in honoring the warrant was objectively unreasonable. Any errors were Judge Sully's fault. Ginsbach did not try to avoid complying with the telephonic warrant requirements or act with reckless disregard of them. Applying the exclusionary rule here would serve no useful deterrent purpose because the rare occasion when a judge inadvertently fails to follow warrant procedures cannot be eliminated by suppressing the evidence in that situation.[24]

---

[22]*See Hessman*, 369 F.3d at 1019-23; *United States v. Berry*, 113 F.3d 121, 123-24 (8th Cir. 1997); *United States v. Freeman*, 897 F.2d 346, 348-50 (8th Cir. 1990); *see also Hornbeck*, 118 F.3d at 617-18 (failure to timely file return and provide defendant with inventory of property seized, in violation of tribal law, did not require suppression); *United States v. Rome*, 809 F.2d 665, 668-71 (10th Cir. 1987) (suppression of evidence obtained from a search warrant, issued in violation of Rule 41, would not serve the "remedial objectives" of the exclusionary rule, as approved by *Leon*).

[23]468 U.S. 981 (1984).

[24]*See Hessman*, 369 F.3d at 1022; *Berry*, 113 F.3d at 123-24; *Freeman*, 897 F.2d at 349-50.

The judge is the final reviewing official who "must shoulder the ultimate responsibility for procedural errors in a warrant application process."[25] Ginsbach, or another tribal officer standing in his shoes, should not be expected to question the judgment of a judicial officer as to the technical sufficiency of a warrant.[26]

Ginsbach was in contact with Judge Sully while the warrant was being considered and could have signed and sworn to an affidavit had she requested him to.[27] His non-compliance with the procedural prerequisites for the issuance of a telephonic warrant was neither intentional nor the result of bad faith.[28]

*Leon, Sheppard,* and *Hessman* reflect the view that permitting people to get away with crime is too high a price to pay for errors that stem from negligence rather than disdain for constitutional requirements. As the Supreme Court observed in *Nix v. Williams,* "the interest of society in determining unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, and not a *worse,* position than they would have been had no police error or misconduct occurred."[29]

---

[25]*Berry,* 113 F.3d at 124.

[26]*See United States v. Hyten,* 5 F.3d 1154, 1156, n.5 (8th Cir. 1993).

[27]*See id.*

[28]*See Hessman,* 369 F.3d at 123; *Berry,* 113 F.3d at 124; *United States v. Curry,* 911 F.2d 72, 77-78 (8th Cir. 1990), *cert. denied,* 498 U.S. 1094 (1991).

[29]467 U.S. at 443 (emphasis in original) (footnote omitted).

13

The Supreme Court applied this same principal in *Hudson v. Michigan*.[30] There the Court held that evidence seized from a home following a violation of the knock and announce requirement was nonetheless admissible.[31] The Court pointed out that the same evidence would have been seized had the officers been more patient and that their error affected the time, but not the fact of the seizure.[32]

What the Supreme Court said in *Nix* and *Hudson* is equally apropos to Medearis's case. Had Judge Sully followed the telephonic warrant procedure described in Rule 41, everything would have proceeded exactly as it did. Tribal officers would have conduced the same search and found the same evidence.

It is important to remember that the Constitution protects property owners not by giving them a license to engage the police in a debate over the propriety of a warrant, but interposing, the "deliberate, impartial judgment of a judicial officer. . . between the citizen and the police"[33] and by providing a right to suppress evidence improperly obtained and a cause of action for damages. Medearis received the benefit of a judge's impartial evaluation before the search occurred. The search was

---

[30] 547 U.S. 586 (2006).

[31] 547 U.S. at 588, 599-602.

[32] *Id.* at 592-94.

[33] *Wong Sun v. United States*, 371 U.S. 471, 481-82 (1963).

14

supported by probable cause. Suppressing the evidence seized would be a remedy out of proportion to the wrong, if any, that occurred and is not called for in this case.

## FEBRUARY 2, 2010 STATEMENTS

Medearis contends that all of his February 2 statements to Ginsbach – while in Medearis's van (before the telephone call to Judge Sully) and while in the kitchen/dining area of his residence (after the call to her) – should be suppressed. He raises three grounds to support his contention.

### A. Voluntariness

Medearis first asserts that the statements he made were involuntary under the Fifth Amendment. He says that his statements were not the product of rational intellect and free will and must be suppressed.

A statement is involuntary when it is extracted by threats, violence or express or implied promises sufficient to overbear the suspect's will and critically impair his capacity for self-determination.[34] Coercive police activity must be shown in order to establish involuntariness.[35]

---

[34] *United States v. LeBrun*, 363 F.3d 715, 724 (8th Cir. 2004) (*en banc*), *cert. denied*, 543 U.S. 1145 (2005).

[35] *United States v. Bordeaux*, 400 F.3d 548, 560 (8th Cir. 2005).

15

The determination of whether a statement is voluntary or not is judged by the totality of the circumstances.[36] In its totality of the circumstances analysis, a court must focus on the conduct of the officers and the suspect's capacity to resist pressure to confess by looking at such things as the specific interrogation tactics employed, the details of the interrogation and the characteristic of the suspect.[37]

The Court has carefully reviewed the record now before it with these precepts in mind. In doing so, the Court has evaluated the conduct of the officers and Medearis's ability to resist pressure and inducements brought to bear on him. Considering all of the factors relevant to the voluntariness inquiry, the Court is unable to find that the officers overbore Medearis's will and capacity for self-determination so as to make his statements involuntary.

## B. Custody

Medearis next contends that his statements were elicited in violation of his rights under *Miranda v. Arizona*.[38] He maintains that he was detained and questioned without any *Miranda* advisement.

---

[36]*LeBrun*, 363 F.3d at 724.

[37]*Id.* at 726.

[38]384 U.S. 436 (1966).

The requirements of *Miranda* are triggered only when a suspect is both in custody and being interrogated.[39] "Custody occurs when a suspect is deprived of his freedom of action in any significant manner."[40] The "ultimate inquiry" in the custody determination "is simply whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest."[41] "Two discrete inquiries are essential to this determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave."[42] In making these inquiries, a court must "look at the totality of the circumstances while keeping in mind that the [custody] determination is based 'on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned.'"[43]

After due consideration of the totality of the circumstances, the Court concludes that Medearis was not in "custody" within the meaning of *Miranda*. Several factors support this conclusion. Medearis was not handcuffed or physically

---

[39]*United States v. Head*, 407 F.3d 925, 928 (8th Cir. 2005), *cert. denied*, 547 U.S. 1082 (2006).

[40]*United States v. Axsom*, 289 F.3d 496, 500 (8th Cir. 2002).

[41]*LeBrun*, 363 F.3d at 720 (*quoting California v. Beheler*, 463 U.S. 1121, 1125 (1983) (*per curiam*)).

[42]*LeBrun*, 363 F.3d at 720 (*quoting Thompson v. Keohane*, 516 U.S. 99, 112 (1995)).

[43]*LeBrun*, 363 F.3d at 720 (*quoting Stansbury v. California*, 511 U.S. 318, 322-23 (1994)).

17

restrained during his encounters with tribal officers. He spoke freely with officers and responded to their questions. His colloquies were of a very short duration and no strong-arm tactics or deceptive stratagems were employed to get him to talk. The atmosphere of his interchanges with officers was not police dominated. And he was not placed under arrest immediately upon the termination of the questioning, but rather, 15 minutes or more later and only after Ginsbach discovered the missing windshield.

Taking into account all of the circumstances present, a reasonable person in Medearis's shoes would not have understood that he was in custody while briefly conversing with tribal officers. The officers, therefore, were not required to warn Medearis of his Fifth Amendment privilege against self-incrimination and right to the assistance of counsel as required by *Miranda* before talking to him. In short, officers did not violate his *Miranda* rights.

## C. "Tainted" Fruit

Lastly, Medearis argues that his statements should be suppressed because they were the "tainted fruit" of a Fourth Amendment violation. But the Court's application of the *Leon* good-faith exception to the exclusionary rule[44] forecloses this argument and the need for any analysis of it.

---

[44]*Hessman*, 369 F.3d at 1023; *see also United States v. Hughes*, 127 F.3d 1132, 1133 (8th Cir. 1997) (applying *Leon* and finding no basis upon which to reverse the district court's decision to deny the defendant's motion to suppress statements), *cert. denied*, 523 U.S. 1013 (1998).

## FEBRUARY 3, 2010 STATEMENTS

Medearis, likewise, claims that his February 3 statements to Keith and Ginsbach, made at Medearis's residence and following his release from tribal custody, should be suppressed because they were the fruit of the illegal search and questioning of him that occurred the previous day. But because the Court has already determined that the search did not violate the Fourth and Fifth Amendments, there was no "poisonous tree" from which any noxious fruit could fall.[45] Medearis's statements are therefore admissible at trial.

## CONCLUSION

The Court finds that the search of Medearis's residence and property did not violate his Fourth Amendment rights so as to require the suppression of the windshield, the photographs taken of it or the ax and hammer. The Court also finds that Medearis's February 2 statements were neither involuntary nor obtained in violation of *Miranda* and that his statements that day and the next day were not the poisonous fruit of some prior illegality. Medearis's suppression Motion – which seeks to exclude this evidence – should thus be denied.

---

[45] *Hessman*, 369 F.3d at 1023.

## RECOMMENDATION

Accordingly, it is hereby

*RECOMMENDED* that Medearis's Motion to Suppress Evidence and Statements, found at Docket No. 16, be denied in its entirety for the reasons stated in this report.

## NOTICE

An aggrieved party must file written objections, within 14 days, in order to attack this report and recommendation before the assigned United States District Judge.[46]

Dated this 20th day of October, 2010, at Pierre, South Dakota.

BY THE COURT:

*/s/ Mark A. Moreno*

MARK A. MORENO
UNITED STATES MAGISTRATE JUDGE

---

[46] *See* 28 U.S.C. §636(b)(1).